IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TONY R. VINCENT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-3460-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

I.  **Procedural Background**

On June 19, 2002, plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, et seq. Plaintiff alleged a disability onset date of April 1, 1990, and claimed disability due to an old gunshot wound; degenerative disc disease; osteoarthritis; low back and right hand pain; acute bronchitis; and numbness in hands and feet. Plaintiff's applications were denied, and plaintiff timely requested a hearing. A hearing was held on January 28, 2004, and by a decision dated May 19, 2004, the Administrative Law Judge ("ALJ") determined that plaintiff suffered impairments which were severe within the meaning of the Regulations, but not enough to meet or equal a Listing in Appendix 1, Subpart P, Regulations No. 4. (Tr. 23). Severe impairments included peripheral vascular disease; chronic low back pain; myofascial pain syndrome; chronic obstructive pulmonary disease; and aching hip secondary to an old gunshot wound. (Id). For the reasons set forth herein, the decision of the ALJ is affirmed.

## II.     Factual Background

The facts are set forth in the parties' respective briefs and will be merely summarized here.

Plaintiff's Testimony

At the time of the hearing, plaintiff was 44 years of age and completed the 9th grade of school. (Tr. 41). Plaintiff has basic reading skills, and is capable of reading the newspaper, a short letter, or a grocery list. (Tr. 42). Plaintiff is able to drive, but is usually driven by his wife. (Tr. 43).

In 1998, plaintiff worked in construction for about 2 months. (Tr. 44). Plaintiff experiences side effects from his medication which include upset stomach and sleepiness. (Tr. 44-45). At night, plaintiff takes medication for pain, Xanax, and muscle relaxers. (Tr. 45).

When questioned by his attorney, plaintiff testified that he was injured in 1989, while unloading a truck, and was laid off. (Tr. 45-46). Plaintiff also suffers from a gunshot wound in his lower back sustained in 1987, which contributes to the back pain. (Tr. 46). Plaintiff applied for workers' compensation, and eventually settled with the company. (Tr. 46-47). Plaintiff testified that he was told that the bullet entered through the lower right side of his abdomen and remains lodged in the left side of his abdomen. (Tr. 47). Resulting scar tissue contributes to low back pain, with pain radiating into his left hip and leg. (Tr. 47-48).

Plaintiff also suffers from numbness in his arms and legs, possibly from peripheral vascular disease. (Tr. 48). As described by counsel, this is a disease of the blood vessels of the extremities which affects circulation. (Id). Plaintiff has trouble gripping and handling items, and experiences pain in his feet when standing too long. (Tr. 49). Plaintiff estimated that he could stand for 15 to 20

2

minutes before needing to sit down, and could sit for 30 minutes. (Tr. 50). He estimated that he could walk a distance of 100 to 150 feet. (Id). Plaintiff estimated that he could lift 10 pounds. (Tr. 51). Plaintiff needs to lie down every day to relieve the back pain. (Id). Plaintiff assists his son with homework, and washes dishes and vacuums, but he needs to take breaks. (Tr. 52-53).

Sometimes, plaintiff attends parent teacher meetings at school, but he has no social activities. (Tr. 53). He stopped smoking cigarettes 2 months prior to the hearing. (Id). Plaintiff used to drink alcohol in social settings, but stopped drinking 2 years before the hearing. (Tr. 54).

Vocational Expert Testimony

The vocational expert described plaintiff's work as a tractor trailer driver as medium work, semi-skilled, and performed at the medium level. (Tr. 55). Plaintiff's work as a construction worker was described as very heavy work, unskilled labor, and performed at the medium exertion level. (Tr. 55).

The vocational expert was asked to assume an individual 30 to 44 years of age during the period of consideration; who completed the 9th grade; performed plaintiff's past work; sustained a gunshot wound to the back and stomach; had a history of a fractured right hand and osteoarthritis; a generalized anxiety disorder; gastroesophageal reflux disease ("GERD"); bronchitis; and chronic obstructive pulmonary disease ("COPD"). (Tr. 55). The vocational expert was additionally asked to assume that the individual had high blood pressure; coronary artery disease; peripheral vascular disease; chronic low back pain; and myofascial pain syndrome; and the ability to sit, stand, and walk 4 hours a day, but needed to alternate standing and walking at 30 minute intervals; could lift up to 25 pounds; and lift 10 pounds frequently. (Tr. 55-56).

3

The vocational expert testified that due to the inability to work with the general public, and the need to have a sit/stand option, there would be no jobs in the light category that such an individual could perform. (Tr. 57-58). There would also not be any jobs in the sedentary category that such an individual could perform, because sedentary work requires that a person be able to sit more than 4 hours at 30 minute intervals. (Tr. 58).

The ALJ then modified the hypothetical to include the ability to stand for up to 8 hours, and walk for up to 2 hours, and after sitting for 30 minutes, simply stand and stay at the work station. (Tr. 58-59). The vocational expert opined that such an individual could perform assembly type work, i.e. sedentary, unskilled. (Tr. 59). Such work would include a file assembler of which there are 81,000 positions nationally, and 15,000 in Missouri. (Id). Another example would be a touch up screener of which there are 58,000 nationally, and 900 in Missouri. (Id). However, if the person could only finger and feel occasionally, the sedentary base would be completely eroded. (Tr. 59-60).

## II.     **Standard of Review**

Review of a final decision of the Commissioner of Social Security is limited to determining if the decision is supported by substantial evidence on the record as a whole. Sanchez-Wentz v. Barnhart, 216 F.Supp.2d 967, 971-72 (D.Neb. 2002). Substantial evidence consists of more than a mere scintilla, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Sanchez-Wentz, at 972 (quotations and citation omitted). The decision should not be reversed merely because substantial evidence would have supported an opposite conclusion. Id. However, the court's review is not simply a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. Id. To determine

4

whether existing evidence is substantial, evidence that detracts from the Commissioner's decision as well as evidence that supports it must be considered. Id. Additionally, the court's review of the decision must include a determination as to whether the proper legal standards were applied. Id.

**IV.     Analysis**

Listings

Plaintiff complains that the ALJ erred in failing to find that his severe lumbar spine impairments equaled or met Regulation 20 CFR, Pt. 404, Subpart P, Appendix 1, § 1.04.

Sec. 1.04 states, in pertinent part that:

> It is used for evaluating impairments like herniated nucleus pulposus and lumbar spinal stenosis. Other conditions include spinal arachnoiditis, osteoarthritis, degenerative disc disease, facet arthritis and vertebral fractures, all of which are examples of conditions that may compromise nerve roots (including the cauda equina) or the spinal cord.

Plaintiff claims that his back pain meets this listing because he was diagnosed by Dr. Robert Bennett with degenerative disc disease, a "quite small" thecal sac in the lumbar area, a small spinal canal, L4-5 spondylosis, fragments from a gunshot wound in the area of his sciatic nerve, and positive leg raising. Plaintiff contends that "these numerous findings are within the contemplation of § 1.00 musculoskeletal system."

Actually, the record does not contain "numerous findings." In fact, after examining plaintiff on October 9, 1990, Dr. Bennett found only some pain on straight leg raising, some decrease overall on the lateral aspect of the left foot versus the right, very mild radiculopathy, and recommended an EMG and Myelogram. (Tr. 143). The Myelogram was performed on December 19, 1990, and revealed only mild bulging of the discs at the L4-5 level, and no significant abnormality seen in the nerve root sheaths. (Tr. 141). A cat scan of the lumbar revealed no disc herniation at L4-5, and no signs of spinal stenosis. (Tr. 142).

Plaintiff next points to the diagnosis recommending that he take great care be taken when ambulating, and argues that it demonstrates the listing has been met. At the request of Disability Determinations Service, Dr. Robert King examined plaintiff on October 11, 2002. (Tr. 174-76). Plaintiff relies on that part of Dr. King's report in which he opined that, due to plaintiff's neurologic deficit, he should not be ambulating unless great care is taken to keep him from falling up and down. (Tr. 176). Notwithstanding this opinion, however, Dr. King expressly found that plaintiff could be employed in a sedentary position. (Id). Thus, although plaintiff may require assistance with walking, i.e. a cane, he is employable, albeit in a sedentary position, and, therefore, not disabled.

In apparent anticipation of this finding, plaintiff argues that even if his low back pain does not meet or equal a listing, the combination of all of his impairments with low back pain equals listing 1.04. I find this argument equally unpersuasive.

Credibility

After determining that plaintiff's impairments did not either singly or in combination meet or equal a listing, and the ALJ considered plaintiff's RFC. In so doing, the ALJ was required to

6

consider a number of factors, including plaintiff's credibility. Generally, an ALJ's credibility determinations are entitled to considerable weight. Sanchez-Wentz, 216 F.Supp.2d at 973. Because evidence of pain tends of necessity to be subjective in nature, it is for the ALJ in the first instance to evaluate the credibility to be accorded a claimant's subjective complaints of pain. Id. An ALJ may not, however, disregard a claimant's subjective complaints of pain solely because of a lack of objective medical evidence. Id. Such evidence is to be discredited only if they are inconsistent with the evidence on the record as a whole. Id. When a claimant's subjective complaints of pain are rejected, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. Id. Guidance in making this determination is provided by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which requires that the ALJ consider the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; the dosage, effectiveness and side effects of medication, and functional restrictions.

At bar, the ALJ initially looked at the medical evidence of record, specifically by Dr. Joseph Apostol, and found that plaintiff had been treated for chest pain, secondary to bronchitis brought on by the heavy smoking of cigarettes and marijuana. (Tr. 23). Although a review of Dr. Apostol's notes indicate plaintiff suffered from chronic obstructive pulmonary disease ("COPD"), smoked a pack of cigarettes daily, and had a family history of heart disease, there is no mention of drug use. (Tr. 202-04). In any event, the ALJ concluded that based on the results of an angiogram performed on November 14, 2003, showing only mild coronary artery disease, with no obstruction of the

7

coronary arteries, the impairment did not significantly limit plaintiff's ability to work and was, therefore, not severe. (Tr. 23)[1].

The ALJ also considered the chronic headaches complained of by plaintiff, and found that the cat scan taken of plaintiff's head in 1999 was normal, and plaintiff did not seek further treatment. (Id). Thus, the ALJ found that it was not a significant limitation on plaintiff's ability to work, and not severe. (Id).

Next, the ALJ noted that although plaintiff complained of anxiety and depression, he did not seek treatment from a mental health professional. (Id). A Psychiatric Review completed on October 21, 2002, indicated that while plaintiff suffered from anxiety related disorders, any limitations on his activities of daily activities, ability to maintain social functioning, ability to maintain concentration, persistence, or pace was mild. (Tr. 183-95). Further, there were no episodes of decompensation. (Tr. 193). The ALJ therefore determined that plaintiff did not suffer a severe mental impairment. (Tr. 23).

The ALJ found that plaintiff suffered severe impairments which included peripheral vascular disease, chronic low back pain, myofascial[2] pain syndrome, COPD, and an aching hip secondary to an old gunshot wound. (Id). However, as previously noted, the ALJ found that these impairments

---

[1] The ALJ states that this information is to be found in exhibit 8F of the record; however, there is no information on an angiogram, only the results of blood work taken on December 2, 2003, and Dr. Apostol's impression that plaintiff presented with symptoms of unstable angina pectoris.

[2] Of or relating to the fascia surrounding and separating muscle tissue. (*PDR Medical Dictionary, 1st ed., pg. 1168*). Fascia is defined as a sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles. (*Id., at pg. 628*).

8

did not meet or equal a listing, and plaintiff's argument of error with this determination has not been persuasive.

Due to plaintiff's COPD impairment, the ALJ concluded that he required a climate controlled workplace, relatively free of environmental irritants; and that such an environment would not be provided in plaintiff's past relevant work as a truck driver and construction worker. (Tr. 23). Therefore, the ALJ concluded that COPD significantly limited plaintiff's ability to work, and is severe. (Tr. 24).

As to plaintiff's complaint of chronic low back pain, the ALJ noted that plaintiff did not require surgery or any other aggressive treatment for relief. (Tr. 24). Earlier tests conducted in 1991 were also considered, as well as the results of those tests which did not indicate impingement or stenosis. (Tr. 24, 141-44).

Plaintiff's credibility was somewhat diminished by the observations of Dr. King, who examined plaintiff regarding his complaints of back problems, old fracture of the right hand, and bronchitis. (Tr. 24). In his report, Dr. King noted that plaintiff took 2 pain pills prior to the examination and that he was "seriously obtunded[3]." (Tr. 174). Dr. King noted that there "was also questionably a moderate odor of alcohol on his breath." (Id). Dr. King also noted that since the inception of back pain, plaintiff has only taken pain pills. (Id). Dr. King's notes indicate that plaintiff advised him that Dr. Zokowski prescribed pain medication until he lost his license. (Id). Dr. King states that although plaintiff denied alcohol use, an alcohol odor emanated from him; Dr. King repeated his observation that plaintiff was "significantly obtunded," and admitted smoking

---

[3]To dull or blunt, especially to blunt sensation or deaden pain. (*PDR Medical Dictionary, pg. 1236*).

marijuana for 10 years. (Tr. 175). All told, Dr. King opined that plaintiff could perform sedentary work, but due to a neurologic deficit, plaintiff should take great care in ambulating. (Tr. 176). Plaintiff attaches great significance to this opinion and argues that it tends to favor his position of disability to work. I disagree, rather than add credence to plaintiff's argument, I find Dr. King's opinion to be that plaintiff is capable of work, albeit in a sedentary position.

Plaintiff's credibility was further lessened by the ALJ's observation that although plaintiff claimed a disability onset date of 1990, he did not seek disability benefits until 2002. (Tr. 25). The ALJ concluded, therefore, that the limitations alleged by plaintiff appeared to be more of a personal choice than an impairment or illness. (Id). Plaintiff's allegations of disabling pain were further diminished by the Medical Source Statement-Physical completed by plaintiff's treating physician, Dr. G. Reed Wouters, in which he noted that although plaintiff suffered chronic low back pain, he did not require rest periods during an 8 hour workday to cope with the symptoms. (Tr. 218).

Plaintiff contends that the ALJ failed in more fully crediting his allegations of pain by ignoring the narcotic pain relievers prescribed, and he requests that the court take judicial notice of the fact that such medication is not prescribed unless the prescribing physician is "convinced to a medical certainty" that it is necessary. Contrary to plaintiff's contention, case law, as well as newspaper and magazine articles have detailed numerous accounts of unethical and inappropriate prescription of narcotic pain killers. Here, the ALJ took note of plaintiff's impairments, even finding some to be severe, as well as plaintiff's ingestion of pain medication. However, this is not sufficient indicia of an inability to work. While there may be no question that a claimant suffers from pain, the question is whether the pain precludes all work. Rankin v. Apfel, 195 F.3d 427, 428 (8th Cir. 1999). Based on this record as a whole, the evidence does not support a finding of disability.

Plaintiff claims there is a mountain of objective evidence to support the limitations alleged, yet, simply notes Dr. King's opinion that plaintiff should take great care in ambulating. Plaintiff also takes issue with the ALJ's observation that plaintiff waited almost 12 years after sustaining the injury to seek disability benefits. Plaintiff claims that by failing to inquire of plaintiff the reason for waiting, the ALJ failed to fully develop the record. Plaintiff does not cite case law to support this argument, but rather, suggests possibilities as to why he waited so long to seek benefits. For instance, plaintiff suggests that his procrastination could have been as the result of delays associated with a Worker's Compensation claim, or ignorance of his right to seek disability benefits. (Plaintiff's Brief: pg. 47-48). Such conjecture is unpersuasive. Further, it has been held that the ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996); quoting, Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993).

Finally, plaintiff's complaint that the ALJ's failed to satisfy every Polaski factor, is without merit. For, the ALJ referred to the Polaski considerations and cited inconsistencies in the record to support his finding that plaintiff's complaints were not fully credible. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). In sum, after a careful review of the record, I find that the ALJ properly discredited plaintiff's subjective complaints, and that this determination was fully supported by the record as a whole. Id.

Treating Physician

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002). If a treating

11

physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion should be given controlling weight. Id. However, a treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight. Id.

Plaintiff claims that the ALJ should have given more weight to the opinion of Dr. Zolkowski who opined in a Medical Source Statement-Physical dated January 16, 2004, that plaintiff could occasionally lift 5 pounds; stand and walk for a total of 4 hours in an 8 hour work day, and continuously for 30 minutes; sit for a total of 4 hours in an 8 hour work day, and continuously for 60 minutes; never climb, balance, or crouch; and that rest for time periods, at the discretion of plaintiff, would be helpful to him. (Tr. 231-33). Plaintiff argues that if the ALJ fashioned his RFC after this assessment, he would have found plaintiff to be disabled.

The record indicates that plaintiff was treated by Dr. Zolkowski on several occasions for back and neck pain. However, the ALJ noted that plaintiff stopped seeing Dr. Zolkowski after he lost his license to prescribe medication, and returned only on the eve of the hearing to obtain support for his claims of disability. (Tr. 25). Although plaintiff complains that it was error for the ALJ to consider the loss of licensing, the record indicates that this information was provided by plaintiff to Dr. King. (Tr. 174). Further, as a chiropractor, Dr. Zolkowski's opinion was not entitled to great weight. Flaherty v. Halter, 182 F.Supp.2d 824, 828 (D.Minn. 2001) (acceptable medical sources are listed in 20 .C.F.R § 404.1513(a) and include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

12

As to Dr. Wouter, plaintiff claims that it was error for the ALJ to determine that Dr. Wouter's opinion was to be given controlling weight, then fail to accept that part of Dr. Wouter's opinion that plaintiff could sit no more than 30 minutes continuously, and did not include it as a limitation in plaintiff's RFC[4]. Plaintiff correctly argues that upon presenting a hypothetical individual with a 30 minute sitting restrictive, the vocational expert testified that sedentary work would be precluded. (Tr. 58). However, the ALJ then modified the question with an assumption that the person could sit the length of time required by sedentary work, and although the person would need to change position after 30 minutes of sitting or standing, the person would not have to leave the work station. (Tr. 58-59). The vocational expert testified that such an individual would be able to perform assembly type jobs which existed in significant numbers in the regional and national economies. (Tr. 59).

Contrary to plaintiff's contention, this did not constitute error, for an ALJ is free to accept, in whole, in part, or not at all, the testimony presented on those impairments he finds unsupported by the record. A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Here, the ALJ properly included in the hypothetical only those limitations supported by the record as a whole. Id. In turn, he was permitted to rely on the vocational expert's response to a properly formulated hypothetical question to meet his burden of showing that

---

[4]Specifically, plaintiff argues that it was not included in the ALJ's findings section of the decision. However, in his decision the ALJ noted that plaintiff suffered from "additional" non-exertional impairments which impeded his ability to perform the full range of sedentary work. (Tr. 26). Moreover, the sit/stand restriction was considered by the ALJ and presented to the vocational expert in a hypothetical question who opined that plaintiff could perform assembly type work. This opinion was adopted by the ALJ; thus, it cannot be said that it was error.

13

jobs exist in significant numbers which a person with plaintiff's RFC can perform. Sultan v. Barnhart, 368 F.3d 857, 864 (8th Cir. 2004).

Accordingly, it is hereby

ORDERED that plaintiff's request for judgment is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March 27, 2006

Kansas City, Missouri